IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEBORAH L. GOGEL, et al.,               :

    Plaintiffs,                          :

v.                                       :          Civil No. GLR-16-2695

JOHN MAROULIS, et al.,                   :

    Defendants.                          :

---

JOHN MAROULIS, et al.                     :

    Third-Party Plaintiffs,              :

v.                                       :

GARMIN INTERNATIONAL, INC., et al.  :

    Third-Party Defendants.              :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Third-Party Defendants Garmin

International, Inc. and Garmin USA, Inc.'s (collectively, "Garmin") Third-Party

Defendants' Motion to Dismiss Amended Third-Party Complaint (ECF No. 53).[1] This 46

---

[1] Also pending is Garmin's Third-Party Defendants' Motion to Dismiss Third-Party
Complaint, (ECF No. 45), which seeks to dismiss the Maroulises' Third-Party Complaint,
(ECF No. 36). Garmin filed that Motion to Dismiss on March 5, 2019. (ECF No. 45). In
response, the Maroulises filed an Amended Third-Party Complaint on March 26, 2019,
(ECF No. 48), in addition to an opposition to the first Motion to Dismiss, (ECF No. 49).
When a plaintiff files an amended complaint, it generally moots any pending motions to
dismiss, because the original complaint is superseded. Venable v. Pritzker, No. GLR-13-
1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014), aff'd, 610 F.App'x 341 (4th Cir.
2015). Accordingly, the Court will deny the Motion to Dismiss the original Third-Party
Complaint as moot.

U.S.C. § 30301 action arises from an August 5, 2013 boating accident off the coast of Ocean City, Maryland that resulted in two deaths. The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[2]

Third-Party Plaintiffs, John Maroulis and Paula Maroulis ("the Maroulises"), owned a passenger vessel named NAUTI CAT (the "Vessel"), which they purchased brand new in the State of Maryland. (Am. Third-Party Compl. ¶ 3, ECF No. 48). On August 5, 2013, John Maroulis was operating the Vessel off the coast of Ocean City, Maryland when two passengers, William M. Gogel, Jr. and Fredy F. Castro, died in an accident that was allegedly caused by John Maroulis' negligent operation of the Vessel. (Id. ¶¶ 2, 4). On July 26, 2016, representatives of Gogel's and Castro's estates sued the Maroulises. (Id.; see also Compl., ECF No. 1). The representatives alleged that Paula Maroulis, who was not present during the accident, breached obligations to the passengers and that John Maroulis was negligent in placing the Vessel in autopilot and failing to regain control of it during the voyage. (Am. Third-Party Compl. ¶¶ 2, 4). John Maroulis was using a Garmin navigation system (the "Navigation System") while the Vessel was in autopilot mode. (Id. ¶ 4).

On November 26, 2018, the Maroulises filed a Third-Party Complaint against Garmin. (ECF No. 36). The Maroulises filed an Amended Third-Party Complaint on March

---

[2] Unless otherwise noted, the Court takes the following facts from the Maroulises Amended Third-Party Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

26, 2019. (ECF No. 48). In the two-count Amended Third-Party Complaint, the Maroulises allege that Garmin was negligent or careless in failing to warn them that the Navigation System could not be used while the Vessel was in autopilot mode or that "special care or attention" had to be exercised when using the Navigation System while autopilot was engaged. (Am. Third-Party Compl. ¶¶ 10, 13, 17). They also contend that the Navigation System suffered from a design defect that manifested while the Vessel was in autopilot mode. (Id. ¶¶ 12, 15, 17). As a result, the Maroulises allege that they are entitled to indemnification (Count I) and contribution (Count II) from Garmin to cover any damages that may be awarded to the decedents' representatives. (Id. ¶¶ 24–27).

Garmin now moves to dismiss both counts in the Amended Third-Party Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), and failure to state a claim upon which relief may be granted under Rule 12(b)(6). (ECF No. 53). The Maroulises filed an Opposition to the pending Motion to Dismiss on April 30, 2019. (ECF No. 59). Garmin filed its Reply on May 14, 2019. (ECF No. 63).

## II.    DISCUSSION

### A. **Standard of Review**

#### 1. **Personal Jurisdiction Challenges under Rule 12(b)(2)**

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo,

N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Mylan, 2 F.3d at 60; Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan, 2 F.3d at 60; Carefirst, 334 F.3d at 396.

Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst, 334 F.3d at 396. Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 (2018), authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212–13 (4th Cir. 2002). That broad

reach does not suggest that analysis under the long-arm statute is irrelevant. Rather, it merely reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Dring v. Sullivan, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals, 887 F.Supp. 116, 118–19 n.2 (D.Md. 1995)). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction may be established through either of two avenues. If the defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." In determining whether specific jurisdiction exists, a court must consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." Carefirst, 334 F.3d at 396; see also ALS Scan, 293 F.3d at 711–12; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. Int'l Shoe, 326 U.S. at 318. To establish general jurisdiction, the defendant's "affiliations with the State [must be] so continuous

and systematic as to render it essentially at home in the forum state." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 139 (2014).

## B. <u>Analysis</u>

### 1. **Specific Jurisdiction**

Garmin challenges specific jurisdiction under Rule 12(b)(2), arguing that there is no evidence that it purposefully availed itself of the privilege of conducting business in the State of Maryland, as required by <u>Carefirst</u>. (Third-Party Defendant's Motion to Dismiss Amended Third-Party Complaint ["Mot. Dismiss"] at 5–6, ECF No. 53).[3] According to Garmin, the Amended Third-Party Complaint fails to allege that Garmin designed, manufactured, or marketed the Navigation System in Maryland or engaged in other activity evidencing Garmin's intent to purposefully direct activity at this State. (<u>Id.</u> at 6). Garmin avers that it does not own, rent, or lease property in Maryland, or maintain any bank accounts here. (Hancox Aff. ¶ 7, ECF No. 53-4). Nor does Garmin have any offices or employees in Maryland. (<u>Id.</u> ¶ 8). As to the Navigation System at issue in this case, Garmin alleges that it was not "involved in [its] design, engineering, manufacture, assembly, testing or repair." (<u>Id.</u> ¶ 10). Moreover, Garmin neither had knowledge of, nor participated in, the installation of the Navigation System in the Vessel. (<u>Id.</u> ¶ 9). Garmin contends that its conduct was limited to offering the Navigation System for sale through "independent, third-party dealers and distributors." (<u>Id.</u> ¶ 12). To support its argument that distribution of the Navigation System via third-parties in the State of Maryland is insufficient to subject

---

[3] Citations to page numbers for Garmin's Motion refer to the pagination the Court's Case Management/Electronic Case Files ("CM/ECF") system assigned.

it to personal jurisdiction, Garmin cites the United State Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court, 137 S.Ct. 1773, 1783 (2017), which declared that "[t]he bare fact that [the defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State." (Mot. Dismiss at 7).

The Maroulises argue that specific jurisdiction exists based on the following: the Navigation System was installed on the Vessel in the State of Maryland (Am. Third-Party Compl. ¶ 4); Garmin is registered to do business in Maryland and has a registered agent in Lutherville Timonium, Maryland (id. ¶¶ 6–7, 9); and Garmin sells its products, including the Navigation System, on its website and throughout a network of authorized dealers within Maryland (id. ¶¶ 8–9). The Maroulises rely upon this Court's decision in Hart v. Bed Bath & Beyond, Inc., 48 F.Supp.3d 837 (D.Md. 2014).

In Hart, homeowners poured fuel gel into a fire pot, which had been purchased from Bed Bath and Beyond ("BBB"). Id. at 839. The fire pot exploded, injuring two nearby guests. Id. The injured guests sued BBB, which, in turn, filed a third-party complaint against Fuel Barons and Losorea. Id. Fuel Barons manufactured the fuel gel and contracted with Losorea to package the fire pots and fuel gel. Id. at 839–40. Losorea, a Georgia corporation, moved to dismiss for lack of personal jurisdiction, arguing that it did not sell the fire pots or fuel gel directly to Maryland customers but, instead, sold the components through third-party distributors. Id. at 840. Following a fact-intensive analysis, this Court denied Losorea's motion to dismiss, holding that "under appropriate fact patterns, a forum state may exercise personal jurisdiction over an out-of-state manufacturer of products that are sold in the forum state by third party distributors." Id. at 842. The Maroulises implore

the Court to reach the same conclusion in this case. Garmin characterizes the Maroulises' reliance upon Hart as "misplaced," because it predates Bristol-Myers. (Third-Party Defs.' Reply Supp. Mot. Dismiss Third-Party Compl. ["Garmin's First Reply"] at 4, ECF No. 54). Garmin argues that Bristol-Myers overruled Hart to the extent that Hart allows the court to exercise jurisdiction over an out-of-state manufacturer that introduces products into a state's stream of commerce via third-party distributors. Id.

Viewing the facts of this case through the jurisdictional roadmaps provided by Hart and Bristol-Myers, the Court concludes that the Maroulises have failed to allege sufficient facts establishing this Court's ability to exercise personal jurisdiction over Garmin. Specifically, there is insufficient evidence that Garmin purposefully directed its activities at the State of Maryland.

As a preliminary matter, this Court finds that the ruling in Hart is neither contradictory to, nor overruled by, the Supreme Court's decision in Bristol-Myers, which merely reiterated that "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." 137 S.Ct. at 1781 (emphasis added). The dispositive language is "standing alone." Careful review of the reasoning in Hart reveals that this Court did not find that Losorea was subject to the jurisdictional reach of this Court solely because it used a third-party distributor to introduce its products into Maryland's stream of commerce. 48 F.Supp.3d at 841–43. To the contrary, this Court identified several factors that led it to conclude that Losorea was subject to its jurisdictional reach, including: the amount of fuel gel Losorea either manufactured or bottled that was ultimately sold in seventeen different cities in Maryland; Losorea's knowledge that the fuel gel would be

distributed by BBB, a national retailer; and Losorea's reliance "on a clearly defined network of distributors for the ultimate sale of the fuel gel in Maryland," thereby "invok[ing] the benefits and protections of the laws of the state." Id. at 843 (internal quotations and citations omitted).

The Maroulises rely upon Hart to their detriment. They have failed to allege comparable facts that would allow this Court to extend its adjudicatory power over Garmin. Although the Maroulises assert that the Navigation System was "installed on the vessel in the State of Maryland," (Am. Third-Party Compl. ¶ 4), the Complaint is silent as to whether a Garmin employee or anyone affiliated with Garmin installed it. Garmin specifically denies any involvement in the installation of the Navigation System. (See Hancox Aff. ¶ 9). The Maroulises do allege that "[t]he Navigation System on the vessel was designed, manufactured, programmed, marketed and sold by" Garmin. (Am. Third-Party Compl. ¶ 5). That allegation is directly contradicted by the affidavit Garmin submitted in support of its Motion in which Garmin disavows any involvement in the "design, engineering, manufacture, assembly, testing or repair" of the system. (Hancox Aff. ¶ 10). Even when the Court resolves that factual dispute in the Maroulises' favor, as it is obligated to do at this stage, the Amended Third-Party Complaint still suffers from a fatal flaw: It contains general allegations that Garmin sells the Navigation System through a network of authorized dealers, but fails to outline how, if at all, Garmin "had an ongoing and intentional commercial relationship" with these third-party dealers - a relationship that was integral to this Court's decision to exercise specific jurisdiction in Hart. See 48 F.Supp.3d at 843; see also Windsor v. Spinner Indus. Co., Ltd., 825 F.Supp.2d 632, 639 (D.Md. 2011)

(finding insufficient allegations to establish personal jurisdiction over a Taiwanese corporation, which directly sold its bicycle components to United States companies that maintained a "web presence in Maryland" and marketed and sold their products in Maryland, because the plaintiffs "offered no details about the particular chain of distribution that brought the allegedly defective product" to Maryland and "made no showing of any additional conduct that would evince an intent to serve the Maryland bicycle market"). As the Supreme Court has unequivocally stated, the introduction of goods into a state, through a third-party distributor without more, is insufficient to extend the jurisdictional reach of the court to an out-of-state manufacturer. Bristol-Myers, 137 S.Ct. at 1783. In sum, the Maroulises have failed to allege sufficient facts demonstrating that Garmin purposefully directed its activities towards Maryland residents or purposefully availed itself of the privilege of conducting activities in this state. Accordingly, the Court will not consider whether the claims arise out of Garmin's activities or whether the exercise of personal jurisdiction would be constitutionally reasonable in this case.[4] The Court now examines if it has general jurisdiction to hear this controversy.

---

[4] The plaintiff must prevail on each of the three prongs articulated in Carefirst, 334 F.3d at 396, for the court to assert specific jurisdiction over the defendant. Only if the court finds that the plaintiff has satisfied the first prong of this test does it then consider the second and third prong. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

### 2. **General Jurisdiction**

The Maroulises also fail to advance any factual or legal arguments from which this Court could find that it has general jurisdiction over Garmin.[5] (See Third-Party Pls.' Mem. Supp. Opp'n Third-Party Defs.' Mot. Dismiss [the "Maroulises' Opp'n"] at 9, ECF No. 59-1) ("[A]n analysis of whether the Court has general jurisdiction over Garmin is unnecessary since the allegations of the Third-Party Complaint arise out of and relate to Garmin's conduct in the jurisdiction . . ."). Garmin nonetheless argues that this Court cannot assert general jurisdiction over it, because Garmin is not "at home" in Maryland. (Mot. Dismiss at 5). Specifically, Garmin argues that it is incorporated and maintains its principal place of business outside of Maryland,[6] and it does not own any offices or properties in Maryland, including manufacturing, assembly, testing, distribution or sales centers. (Id.). Garmin also claims that it does not have any employees in Maryland. (Id.). These assertions are substantiated by an exhibit that the Maroulises attached to their Opposition. In a 2017 10-K filed with the Securities and Exchange Commission ("SEC"), Garmin reported that it "occup[ies] facilities of approximately 1,215,000 square feet on approximately 107 acres in Olathe, Kansas, where the majority of the product design and development work is conducted . . . and products are warehoused, distributed, and

---

[5] Because the Court has concluded that it does not have either specific or general jurisdiction to hear this case, the Court will not address Garmin's alternative arguments for dismissal.

[6] In its pleadings, Garmin never identifies where it is incorporated or where it maintains its principal place of business. However, the Maroulises allege that Garmin is incorporated in Kansas and maintains its principal place of business in Olathe, Kansas. (Am. Third-Party Compl. ¶¶ 6–7).

supported for North, Central and South America." (Garmin Ltd., 2017 Form 10-K Annual Report ["Garmin 10-K"], ECF No. 59-2 at 8).[7] Additionally, "Garmin International, Inc. owns and occupies an approximate 60,000 square foot facility in Chandler, Arizona, used as office space." (Id.). Garmin subsidiaries lease office space in Olathe, Kansas for call center operations; in Yarmouth, Maine for office and development use; and in Tucson, Arizona for research and development. (Id.). The portions of Garmin's 10-K submitted to the Court do not identify any offices, facilities, buildings, or land within the State of Maryland that Garmin leases, owns, or occupies to conducts its business operations.

Based on Garmin's assertions and the 10-K submitted by the Maroulises, this Court has little difficulty in concluding that Garmin is not "at home" in Maryland, even though Garmin is registered to do business in Maryland and has a registered agent in Maryland. Those facts, standing alone, do not establish general jurisdiction. See, e.g., Tyler v. Gaines Motor Lines, Inc., 245 F.Supp.2d 730, 732 (D.Md. 2003) (rejecting a plaintiff's argument that the defendant's appointment of a registered agent was sufficient to establish general jurisdiction); see also Ratliff v. Cooper Labs., Inc., 444 F.2d 745, 748 (4th Cir. 1971) ("[T]he application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."). The Court cannot exercise general jurisdiction over Garmin.[8]

---

[7] Citations to page numbers for Garmin's 10-K refer to the pagination the Court's CM/ECF system assigned.

[8] The Maroulises assert that they have not had an opportunity to conduct discovery to determine if Garmin is subject to personal jurisdiction. (Currey Aff. ¶ 3, ECF No. 59-4).

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Third-Party Defendants Garmin International, Inc. and Garmin USA, Inc.'s Third-Party Defendants' Motion to Dismiss Amended Third-Party Complaint. (ECF No. 53). A separate order follows.

Entered this 30th day of October, 2019.

_____/s/_____
George L. Russell, III
United States District Judge

---

They have requested an opportunity to conduct jurisdictional discovery related to Garmin's sales, marketing activities, distributor agreements, and post-sales support. (Id. ¶ 5). "[T]he decision whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." Base Metal Trading Ltd., 283 F.3d at 216 n.3. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst, 334 F.3d at 402. Here, the Maroulises have offered only conclusory assertions regarding Garmin's contacts with Maryland and have actually presented evidence rebutting their own jurisdictional allegations. Accordingly, the Court will not allow the Maroulises to conduct jurisdictional discovery.